On the evening of September 10, 2018, Mr. Bowyer was served with a Writ of Summons. There is no indication that he knew the basis of the lawsuit, as the Complaint had not yet been filed. That same evening, according to Plaintiffs, Mr. Bowyer sent text messages to RK, which admitted he was the author of the defamatory postings. One of the text messages from that night states the following:

> I swear on my life I will make this right. I will do whatever it takes. But please Rich, I can't mentally or physically handle a court case. It will literally kill me. Please give me the chance to make this right. I swear to god [sic] everything has changed for me after my hospitalization. I just want to be thankful to god [sic] that I'm still here and be good to my wife, that's it. Please let me make this right…

*Id.* ¶ 73.

Plaintiff retained the services of Sidney Gold, Esquire. On September 17, 2018, Sidney Gold, Esquire called the Plaintiffs' counsel, stating he was calling on behalf of Mr. Bowyer and that Mr. Bowyer had admitted to authoring the online postings. *Id.* ¶ 76. Subsequently, on or about October 8, 2018, Bowyer admitted that he could not recall all of the places he signed Plaintiffs up for emails and calls from and he requested that Plaintiffs provide him with a list of all places from which they are still being contacted. *Id.* ¶ 77. On or about October 8, 2018, Bowyer also admitted that he used a "burner phone" to engage in the activities described above and that he did not have a record of everything he had done to Plaintiffs. *Id.* ¶ 78.

Plaintiffs' claims of willful acts taken for the purpose of causing harm are all based upon the admissions in the State Court Litigation, and rely upon details in the "Manifesto" which was also deemed admitted in the State Court Litigation. According to Plaintiff, "[a]s detailed in the Manifesto," Mr. Bowyer's:

- defamatory statements and acts of commercial disparagement were willful acts taken for the specific purpose of causing harm

4

    to Plaintiffs and putting KLF out of business. *Id.* ¶ 88.

- conduct that inflicted emotional distress upon RK was willful and taken for the specific purpose of causing harm to RK or with substantial certainty the acts would cause injury. *Id.* ¶ 89.

- Bowyer's actions that constituted identity theft, pretending to be RK or KLF and signing them up to receive countless newsletters in an effort to harass them and cause their email systems to be so clogged up they were rendered unusable, was done for the specific purpose of causing RK and KLF harm or with substantial certainty the acts would cause injury. *Id.* ¶ 90.

These allegations are insufficient to state a claim, as the admissions have no bearing on this action.

**II.     ARGUMENT**

    A.    **This Court Should Strike Immaterial, Impertinent and Scandalous Matters from Plaintiffs' Complaint.**

Rule 12(f) of the Federal Rules of Civil procedure governs motions to strike material from pleadings in federal civil litigation. District courts have broad discretion to grant motions to strike whenever the pleadings contain allegations or defenses that have no possible relation to the controversy, confuse the issues in the case, or cause unfair prejudice to one of the parties. *See, e.g., Vay v. Huston,* 2015 WL 4461000, at *4 (W.D. Pa. July 21, 2015) (striking from motion scandalous matter pertaining to alleged behavior of counsel in connection with depositions). The purpose of a Rule 12(f) motion is to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *Id.* "Immaterial" matter is that which has no essential or important relationship to the claim for relief. *Conklin v. Anthou*, No. 1:10-CV-02501, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011) (striking allegations of judicial corruption). "Impertinent" matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Id.* "Scandalous" matter includes allegations that improperly cast a derogatory light on a party or other

5

person, reflect cruelly on a party's moral character, use "repulsive language," or detract from the court's dignity. *Vay*, 2015 WL 4461000, at *4.

Plaintiffs' Second Amended Complaint contains several allegations that are scandalous and impertinent and therefore should be stricken. Specifically, the Second Amended Complaint contains allegations that are irrelevant, unrelated to the actual cause of actions alleged, would be inadmissible as evidence and would inflame the social conscious or biases of the jury and suggest a decision on an improper basis.

> **1.    Paragraphs 73 through 78 of the Complaint should be stricken as inadmissible settlement negotiations.**

The portions of Plaintiffs' Complaint that discuss the substance of settlement communications that occurred in the State Court proceeding should be stricken. The first group of communications occurred on September 10, 2018, the date that Mr. Bowyer was served with a Writ of Summons. ECF 1 ¶ 73. That same day, Mr. Bowyer sent a text message to Plaintiffs pleading to "make it right," because he "can't mentally or physically handle a court case," and noting he will do "whatever it takes." *Id.* Later that evening, Mr. Bowyer left a voicemail for Plaintiffs reiterating his desire to "make this right."[2] *Id.* ¶ 75. Mr. Bowyer then obtained an attorney, Sidney Gold, Esquire. Mr. Gold allegedly called counsel for Plaintiffs on behalf of Mr. Bowyer. Plaintiffs alleges that Mr. Gold informed Plaintiffs' counsel that Mr. Bowyer "admitted to being the author of the online postings" to Plaintiffs' counsel.[3] *Id.* ¶ 76. These statements were made in the hopes of settling this action and are deemed inadmissible.

---

[2] Plaintiffs' contention that these alleged statements by Mr. Bowyer are deemed admissions lack merit, as Mr. Bowyer was not yet served with the Complaint when he contacted Plaintiffs. He had no idea of the basis of Plaintiffs' claims. He only knew that he was being sued and he wanted to settle the matter by "making it right," because he had just been released from the hospital and wanted to enjoy his time with his wife. ECF 1 ¶¶ 73-75.

[3] This allegation renders counsel for Plaintiff a fact witness in this matter and, as such, may be subject to disqualification.

6

Evidence of such settlement discussions is inadmissible under Federal Rules of Evidence 408; therefore, any allegations of such discussions should be stricken as immaterial pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. There can be no doubt that the substance of these alleged settlement negotiations would in fact be inadmissible under Rule 408 of the Federal Rules of Civil Procedure which provides:

> Rule 408 of the Federal Rules of Evidence provides:
>
>> (a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>>
>>> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>>>
>>> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>>
>> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Because it is "generally believed that settlement negotiations will be inhibited if the parties are aware their statements may later be used as admissions of liability," Rule 408 of the Federal Rules of Evidence serves to protect the freedom of discussion during negotiations and encourage settlement. *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 285 (E.D. Pa. 2009).

The communications described above constitute settlement negotiations as contemplated by Rule 408 of the Federal Rules of Evidence. Defendant allegedly reached out to Plaintiffs after receiving the Writ of Summons to indicating his intent "to make this right" and requesting to "make

7

this right by you," because he "just want[s] to do the right things." ECF 1 ¶¶ 74-76. Unsuccessful in his attempts, Mr. Bowyer hired an esteemed lawyer to represent him. Plaintiffs seek to use the statements of his attorney to Plaintiffs' counsel against him to prove liability, ignoring the fact the statements were made in an attempt to settle the matter.

Pursuant to Rule 408 of the Federal Rules of Evidence, the introduction of evidence of settlement negotiations is admissible for some purposes, it is not admissible for others. Fed. R. Evid. 408. One such prohibited purpose is to prove liability for a disputed claim. *See Id.* Because there is no doubt that Plaintiffs are seeking to use the content of these discussions to prove Defendant's liability, Plaintiffs' introduction of these settlement negotiations would be barred.

As the admission of the settlement communications would be precluded by Rule 408 of the Federal Rules of Evidence, the next step is to determine whether to strike allegations referring to these communications in Plaintiffs' Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Several courts have granted motions to strike such allegations as immaterial. *See, e.g., Bergman v. Jefferson-Pilot Life Ins. Co*., No. 03-4459, 2003 U.S. Dist. LEXIS 23689, 2003 WL 23142155, at *1 (E.D. Pa. Dec. 30, 2003); Scott v. Twp. of Bristol*, No. 90-1412, 1991 U.S. Dist. LEXIS 3303, 1991 WL 40354, at *5 (E.D. Pa. Mar. 20, 1991); *Agnew v. Aydin Corp*., No. 88-3436, 1988 U.S. Dist. LEXIS 9911, 1988 WL 92872, at *4 (E.D. Pa. Sept. 6, 1988). Therefore, the portions of Plaintiffs' Complaint that allege evidence of settlement negotiations should be stricken. *Philadelphia's Church of Our Savior v. Concord Twp*., No. 03-1766, 2004 U.S. Dist. LEXIS 15400, at *8-9 (E.D. Pa. July 27, 2004), *citing Agnew v. Aydin Corporation*. 1988 U.S. Dist. LEXIS 9911, Civ. A. No. 88-3436, 1988 WL 92872, *4 (E.D. Pa. Sept. 6, 1988) (parts of a complaint may be stricken pursuant to Rule 408 if they are for the purpose of showing liability and refer to settlement negotiations); *United States Transmission Sys. v. Americus Ctr., Inc.*, 1986 U.S.

8

Dist. LEXIS 17057, Civ. A. No. 85-7044. 1986 WL 13838, *2 (E.D. Pa. Dec. 3, 1986) (striking allegations from a complaint as they fall within Rule 408 and are thus clearly inadmissible); *Scott v. Township of Bristol*, 1991 U.S. Dist. LEXIS 3303, Civ. A. No. 90-1412, 1991 WL 40354, *5 (E.D. Pa. Mar. 20, 1991) (striking allegations referencing settlement discussions as immaterial and of questionable probative value).

>   **2.    All references to the purported admissions in the State Court Proceeding should be stricken, as admissions pursuant to Pa. R. Civ. P. 4014(d) are not admissions for any other purpose and may not be used against the party in any other proceeding.**

Paragraphs 17, 18, 21- 26, 87-91, 93-94, Exhibits 2 and 3 of the Complaint improperly rely upon admissions deemed admitted in the State Court Proceeding and should be stricken. Plaintiffs served Requests for Admissions in the State Court Proceeding, which were deemed admitted by Order dated May 6, 2019. ECF 1 ¶ 93. Plaintiffs attempt to use these purported admissions to conclusively establish the elements of Plaintiffs' cause of action, even though Rule 4014(d) of the Pennsylvania Rules of Civil Procedure expressly limits the use of admissions to the pending proceeding and prohibit their use against the admitting party in any other proceeding. *Cozzone v. Ingui (In re Ingui),* Nos. 04-16847DWS, 04-0868, 2005 Bankr. LEXIS 2827, at *5 (Bankr. E.D. Pa. July 6, 2005)(Sigmund, J.).

Rule 4014(d) of the Pennsylvania Rules of Civil Procedure provides:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 212.3 governing pre-trial conferences, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him or her in maintaining the action or defense on the merits. <u>Any admission by a party under this rule is for the purpose of the pending action only and is not an admission by the party for any other purpose nor may it be used against the party in any other proceeding.</u>

Pa. R. Civ. P. 4104(d) (emphasis added)

The explanatory comment to 4014 states that "prior Rule 4014 has been completely revised to conform to Fed.R.Civ.P. 36 as amended in 1970" and notes that:

> "the amendments make the following significant changes in present practice:
>
> (8) Finally, subdivision (d) sets forth the terms under which an admission may be withdrawn or amended and the effect of possible prejudice to the inquirer from an amendment or withdrawal. It also contains the important condition that the admission is localized in the pending action and cannot be used against him in any other proceeding. (Emphasis added.)

Rules 36 of the Federal Rules of Civil Procedure upon which Rule 4104(d) is based provides:

> (b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. <u>Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding</u>.

(Emphasis added.)

Notably the applicable language is identical to the language adopted by the Pennsylvania rules when the Pennsylvania rules were amended.  In *Cozzone*, Chief Judge Sigmund addressed the issue as to whether requests for admissions that were deemed admitted in a State Court proceeding were admissible in a subsequent adversary proceeding involving the same parties.  Like

10

here, Plaintiffs contended that facts that were deemed admitted in a State Court proceeding could be used in an adversary proceeding to prove any element of the cause of action.

Chief Judge Sigmund began by analyzing both Rule 4104(d) of the Pennsylvania Rules of Civil Procedure and Rule 36 of the Federal Rules of Civil Procedure, noting that the two Rules were "identical" and finding that Pennsylvania "expect[s] the construction of Pennsylvania Rule 4014 to be consistent with the federal construction of Rule 36." *Cozzone,* 2005 Bankr. LEXIS 2827, at *8 (citing *Dwight v. Girard Medical Ctr.*, 623 A.2d 913, 916 (Pa. Cmwlth 1993)).

After proclaiming that "there is not much case law on this rule, perhaps explainable by the fact that it is clear on its fact," Chief Judge Sigmund examined authority from the Seventh Circuit which held admissions used in a Tax Court proceeding could not be used in an adversary proceeding. *Id., citing In re Cassidy*, 892 F.2d 637 (7th Cir. 1990); *see also Woods v. Robb*, 171 F.2d 539, 541 (5th Cir. 1948) (noting that failure to answer requests for admissions in the pending civil trial was not excused based on the privilege against self-incrimination because they could not be used in any other proceeding); *Seay v. International Association of Machinists*, 360 F. Supp. 123, 124 and n.1 (C.D. Cal. 1973) (analogizing stipulations to admissions under Fed. R .Civ.P. 36 and noting that neither may be used in a subsequent proceeding); *Weis-Fricker Export and Import Corp. v. Hartford Accident and Indemnity Corp.*, 143 F. Supp. 137, 138 (N.D. Fla. 1956) (analogizing a default judgment based on unanswered interrogatories to unanswered requests for admission under Rule 36(a) and observing that they would have no value in subsequent litigation). After declaring that federal and state procedural law bar the use of admissions in subsequent proceedings, Judge Sigmund held "it is clear that Plaintiffs may not use the admissions or the findings of the State Court Proceeding premised thereon as substantive evidence in this adversary case." *Cozzone,* 2005 Bankr. LEXIS 2827, at *11 (Bankr. E.D. Pa. July 6, 2005).

11

Plaintiffs are seeking to use admissions in the State Court Action as a factual basis for its claims in this action. As Paragraphs 17, 18, 21- 26, 87-91, 93-94, Exhibits 2 and 3 of the Complaint rely on the admissions as a factual basis. The admissions in Paragraphs 17, 18, 21- 26, 87-91, 93-94, Exhibits 2 and 3 of the Complaint have no legal value in this case as those admissions were for the State Court proceeding only and may not be used in this proceeding against Mr. Bowyer. This renders the paragraphs containing the admissions, immaterial, impertinent and scandalous and should be stricken. As such all allegations relating to the deemed admissions should be stricken.

> B. **Plaintiffs' Complaint Should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.**

Although Rule 8(a)(2) of the Federal Rules of Civil Procedure, incorporated into Rule 7008 of the Federal Rules of Bankruptcy Procedure, provides that a complaint shall consist of "a short and plain statement of the claim showing that the pleader is entitled to relief," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Allegations must consist of more than mere labels, legal conclusions, or a "'formulaic recitation of the elements of a cause of action.'" *Id.*

The Supreme Court has suggested a "'two-pronged approach'" when assessing whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950 *quoted in Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). First, a court should begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Ultimately, "a complaint must do more than allege the Plaintiffs' entitlement to relief. A complaint

12

has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This showing "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must show more than a mere possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. While the Court must accept all well-pled allegations as true, it need not credit the Plaintiffs' unsupported legal conclusions and unwarranted factual inferences, and it is not compelled to accept legal conclusions couched as factual allegations. *Doug Grant, Inc. v. Greate Bay CasinoCorp.*, 232 F.3d 173, 183–84 (3d Cir. 2000); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

### 1. Plaintiffs' Complaint Should be Dismissed for Failure to allege a willful and malicious injury by Defendant to Plaintiffs.

Plaintiffs' Complaint fails to state a claim because it fails to allege a willful and malicious injury by Defendant. Section 523(a)(6) provides that "[a] discharge . . . does not discharge an individual debtor from any debt [] for willful and malicious injury by the debtor to another entity . . . ." 11 U.S.C. § 523(a)(6). *Nace v. Quibell (In re Quibell)*, Nos. 1:10-bk-05863 MDF, 1:10-ap-00337, 2011 Bankr. LEXIS 426, at *14 (Bankr. M.D. Pa. Jan. 28, 2011). In order to make out a case for nondischargeability based on a willful injury under § 523(a)(6), a plaintiff must plead and prove that the defendant actually intended to inflict harm. *Kawaauhau v. Geiger* 523 U.S. 57, 61-62, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998). Injuries either negligently or recklessly inflicted do not come within the scope of § 523(a)(6). *Id.* at 64; *see also*, *Conte v. Gautam (In re Conte)*, 33 F.3d 303, 305 (3d Cir. 1994) ("An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result.") *Nace v. Quibell (In re Quibell)*, Nos. 1:10-bk-05863 MDF, 1:10-ap-00337, 2011 Bankr. LEXIS 426, at *15-16 (Bankr. M.D. Pa. Jan. 28, 2011)

13

Plaintiffs' Complaint relies upon the request for admissions in alleging that Defendant acted willfully and maliciously, by basing all allegations upon the "Manifesto" which was deemed admitted. These allegations form the basis for Plaintiffs' conclusory allegations that Mr. Bowyer acted willfully:

> 87. Bowyer was deemed to have admitted that he sent the Manifesto to harass or cause emotional harm to Plaintiffs.
>
> 88. As detailed in the Manifesto, Bowyer's defamatory statements and acts of commercial disparagement were willful acts taken for the specific purpose of causing harm to Plaintiffs' and putting KLF out of business.
>
> 89. As detailed in the Manifesto, Bowyer's conduct that inflicted emotional distress upon RK was willful and taken for the specific purpose of causing harm to RK or with substantial certainty the acts would cause injury.
>
> 90. As detailed in the Manifesto, Bowyer's actions that constituted identify theft, pretending to be RK or KLF and signing them up to receive countless newsletters in an effort to harass them and cause their email systems to be so clogged up they were rendered unusable, was done for the specific purpose of causing RK and KLF harm or with substantial certainty the acts would cause injury.

By relying upon the admissions to state its claim, Plaintiffs have failed to state a claim upon which relief can be granted, as the State Court admissions have no factual bearing in this matter. Accordingly, Plaintiffs' Complaint should be dismissed.

**2.    Plaintiffs have not Properly Alleged a Claim for Defamation.**

The elements of a defamation claim under Pennsylvania law are: 1) the defamatory character of the communication, 2) its publication by the defendant, 3) its application to the plaintiff, 4) the understanding by the recipient of its defamatory meaning, 5) the understanding by the recipient of it as intended to be applied to the plaintiff, 6) special harm resulting to the plaintiff

14

from its publication, 7) abuse of a conditionally privileged occasion. *See Joseph v. Scranton Times L.P.*, 959 A.2d 322, 335 (Pa. Super. ct. 2008); 42 Pa. C.S.A. § 8343(a).

Plaintiffs fail to identify what allegedly defamatory statements were made, to whom they were made and when they were made. The Complaint generally alleges in conclusion of terms that Plaintiffs were defamed by vague, identified "online false and defamatory reviews," made under unidentified "fake names and email addresses," "falsely posing" as unidentified "former and prospective clients." This is nothing more than a veiled attempt to have Defendant held responsible for every review of Plaintiffs, regardless of whether it is defamatory, privileged or flattering.

The Complaint provides a "minor sampling" of the "approximately 80 different online reviews" that Plaintiffs allege were false and defamatory, ECF 1 ¶¶ 9(a), 28, but the Complaint contains approximately forty-five screen shots presumably constituting the online reviews without providing the dates the reviews were posted, or what portions of the reviews Plaintiffs contend were false and defamatory. Indeed, some of the reviews are favorable to Plaintiffs. *See e.g.* ¶¶ 34 ("Eager. Mr. Kim does genuinely seem like he wants to help with legal problems of the consumer protection nature. . . .I must compliment Mr. Kim for his optimistic & go-getter attitude. His positivity is infectious.")

Furthermore, Plaintiffs have not identified any specific recipient of the alleged communications, and thus has failed to connect the defamatory statements to any harm to his reputation, or any other claimed injury. As such, Plaintiffs have not sufficiently alleged facts which satisfy the elements of defamation under Pennsylvania law. *See Turk v. Salisbury Behavioral Health, Inc.*, No. 09-CV-6181, 2010 U.S. Dist. LEXIS 41640, at *10-12 (E.D. Pa. Apr. 27, 2010).

### 3. Plaintiff's Claim for Intentional Infliction of Emotional Distress should be dismissed for failure to state a claim.

Mr. Kim also fails to state a claim for intentional infliction of emotional distress, because the conduct as alleged by Plaintiffs cannot rise to the level of outrageousness required to state a claim, and because Plaintiffs have failed to allege physical injury. The Pennsylvania Supreme Court has not formally recognized a cause of action for intentional infliction of emotional distress. *Taylor v. Albert Einstein Med. Ctr.*, 562 Pa. 176, 754 A.2d 650, 652 (2000), while the Pennsylvania Superior Court has recognized the cause of action, the breath is extremely limited. In order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005). To establish a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) defendant's conduct was intentional or reckless; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe." *Watson v. Witmer*, 183 F. Supp. 3d 607, 617 (M.D. Pa. 2016).

The "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society the claim fails" *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)). "Only the most egregious conduct will be sufficient basis for a cause of action of intentional infliction of emotional distress." *Id.* (citing *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing the Plaintiffs' son with an automobile and failing to notify authorities or seek medical assistance, buried the body in a field where it was discovered two months later and returned to the parents);

16

*Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party, which led to the plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that the plaintiff was suffering from a fatal disease when physician knew such information was false)).

Recovery for the tort of intentional infliction of emotional distress is reserved for "only the most clearly desperate and ultra-extreme conduct." *Id.* at 754. The conduct "must be such that 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!'" *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997) (internal quotations removed)). The determination as to "whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' [i]s a matter of law." *L.H.*, 130 F. Supp. 3d at 927-28.

Defendant's conduct cannot be determined to be sufficiently extreme to constitute outrageousness as a matter of law. Here, Plaintiffs recite nothing more than boilerplate allegations. There are no factual allegations that Defendant actually suffered "extreme emotional distress" or that Plaintiffs actually suffered physical harm.

The Supreme Court of Pennsylvania has "held that if the Commonwealth did recognize the tort, the 'existence of the alleged emotional distress must be supported by competent medical evidence,'" and that "[i]n addition, 'a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'" *Wardlaw*, 378 Fed. Appx. 222, 2015 WL 1312028, at *2, quoting *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 995 (Pa. 1987); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005). It is simply insufficient to

17

baldly allege in conclusory fashion that Plaintiffs suffered psychological harm as a result of the alleged conduct without any factual allegation in support thereof. By alleging "psychological harm" Plaintiffs plead the element of the claim, not facts supporting it. Plaintiffs have failed to allege outrageous conduct or physical injury; therefore, Plaintiffs failed to state a claim for intentional infliction of emotional distress.

      **C.    Plaintiff's Complaint should be dismissed for lack of proper service upon the Debtor.**

The Adversary Complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5) for lack of personal jurisdiction due to insufficient service. Service of process is a requisite to the Court's personal jurisdiction over a Defendant and to any valid judgment entered against that party. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991). A party challenging the sufficiency of service under Rule 12(b)(5) must prove by a preponderance of the evidence that service was not sufficient under the requirements set forth by the Federal Rules. *Grand Entm's Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1994). Service pursuant to Federal Rule of Bankruptcy Procedure 7004(b) is to be made by "first class mail postage prepaid" in addition to the methods of service authorized by Federal Rule of Civil Procedure 4(e)-(j).

Plaintiff did not serve Mr. Bowyer in by "first class mail postage prepaid," but rather by Federal Express. Service by Federal Express does not meet the service requirements of F.R.B.P. 7004. *See In re Diloreto*, 2008 Bankr. LEXIS 140, *11 (E.D. Pa. Jan. 11, 2008), *citing Ayres v. Jacobs & Crumplar, P.A.*, 99. F.3d 565, 570 (3d Cir. 1995). Therefore, the Adversary Complaint must be dismissed because this Court is unable to exercise personal jurisdiction due to the lack of sufficient service on the debtor.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs' Complaint should be dismissed. In the alternative, Defendant's Motion to Strike should be granted and all allegations to settlement negotiations as well as the admissions from prior proceedings should be stricken.

Respectfully submitted,

**KENNY, BURNS & MCGILL**

/s/Thomas D. Kenny\
Thomas D. Kenny, Esquire\
Identification No. 77611\
Eileen T. Burns, Esquire\
Identification No. 80404\
1500 John F. Kennedy Blvd.\
Suite 520\
Philadelphia, PA  19102\
(215) 423-5500\
filings@kennyburnsmcgill.com

Attorneys for Defendant\
James Fitzgerald Bowyer

Dated: November 14, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November 2019, I caused a true and correct copy of the foregoing to be served upon all counsel via the court's electronic filing system.

/s/ Thomas D. Kenny
Thomas D. Kenny, Esquire
