**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| JAMES FITZGERALD BOWYER, | : | Case No. 19-13113(MDC) |
| | : | |
| *Debtor.* | : | |
| | : | |
| THE KIM LAW FIRM LLC and | : | |
| RICHARD KIM, | : | Adv. No. 19-00200(MDC) |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES FITZGERALD BOWYER, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR RESPONSE IN OPPOSITION TO DEBTOR/DEFENDANT JAMES**
**FITZGERALD BOWYER'S MOTION TO DISMISS**
**PLAINTIFFS' ADVERSARY COMPLAINT**

Plaintiffs The Kim Law Firm, LLC ("KLF") and Richard Kim ("RK", collectively with "KLF" are the "Plaintiffs"), by and through the undersigned counsel, hereby respond to Debtor/Defendant James Fitzgerald Bowyer's ("Defendant" or "Bowyer") Motion to Dismiss ("Def.'s Motion") Plaintiff's Complaint (the "Complaint"), and in support thereof, avers as follows:

I.    **PRELIMINARY STATEMENT**

As set forth in Plaintiffs' Complaint (ECF 40), Bowyer has posted reviews online through the use of various pen names asserting false allegations against Plaintiffs, and his defense to those actions in the underlying state court action was to assert his privilege against self-

1

incrimination.  Those defamatory publications include ethnic attacks and slurs against RK for his Asian heritage (including alleged inability to speak the English language); false claims of sexual harassment lawsuits against Plaintiffs, despite there being none; and falsely representing that Plaintiffs were going to be sued by the Federal Trade Commission (the "FTC").  Bowyer even caused emotional harm to RK by falsely stating in communications to RK that he was subject to an investigation by the Pennsylvania Disciplinary Board, which Bowyer knew was false.  Plaintiffs have included "screen shots" showing the content of the defamatory reviews within the body of the Complaint, some of which are also set forth below.  (ECF 40).  As alleged in the Complaint, when Defendant Bowyer made these assertions, he knew that they were all false.  Bowyer's intent was simple – to destroy Plaintiffs' reputation, emotional well-being and business operations – and Bowyer was successful in his relentless campaign to cause the Plaintiffs harm.  As alleged in paragraphs 24-26 of the Complaint, Bowyer drafted a Manifesto that he sent to RK pretending to be a prospective client, wherein Bowyer detailed his course of conduct to RK and explained that the reason he was engaging in the course of conduct was to destroy RK's reputation and put his firm out of business.

As if the false reviews defaming Plaintiffs were not enough, Bowyer engaged in an email campaign using false names and created email accounts threatening to cause RK *physical harm*.

Despite the clear wrongdoing, Bowyer argues that the Complaint should be dismissed as a matter of law.  Bowyer primarily contends that: (i) various paragraphs in the Complaint should be stricken because they constitute privileged settlement communications; (ii) various paragraphs and exhibits to the Complaint detailing admissions in the state court should be stricken because they are prohibited by the Pennsylvania Rules of Civil Procedure; and that (iii) Plaintiff has failed to demonstrate willfulness or maliciousness pursuant to Title 11 of the United States Code,

Section 523(a)(6) ("Section 523(a)(6)").  As discussed further below, each of these arguments fails because, among other reasons: (i) the purported settlement communications were actually unsolicited admissions of guilt, which are not privileged communications; (ii) whether the judicial admissions referenced in the Complaint are admissible is not the proper subject of a motion to dismiss; (iii) the well pled facts in the Complaint in addition to the admissions demonstrate Plaintiffs' claims are exempt from discharge; and (iv) Plaintiffs have asserted numerous facts demonstrating that Bowyer's racist and defamatory posts constitute willful and malicious conduct as required by Section 523(a)(6).  The truth is simple, the Bankruptcy Code provides a "fresh start" to honest debtors and is not intended to be a means for a Bowyer to escape liability for conduct meant to destroy the Plaintiffs' livelihood, as detailed in Bowyer's Manifesto. See Corcoran v. McCabe (In re McCabe), 559 B.R. 415, 427 (Bankr. E.D. Pa. 2016) (holding that the "Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs and obtain a 'fresh start,' unburdened by the weight of preexisting debt…") (citation omitted.).  Accordingly, Bowyer's Motion must be denied in its entirety.

## II.   STATEMENT OF FACTS

Defendant is an attorney who has been licensed to practice law in the Commonwealth of Pennsylvania since November 24, 2008, with PA Bar ID No. 208186, and was employed by KLF from approximately September 2017 to November 2017. (ECF 40, ¶ 9).  In November 2017, Defendant was terminated from employment with KLF because quality of work product. (ECF 40, ¶ 10).

From approximately March 2018 through June 2018, Plaintiffs were subjected to a constant series of persistent harassment and threats by Bowyer, including, but not limited to the following:

- Posting of approximately 80 different online reviews containing false and defamatory reviews about Plaintiffs, where Bowyer used fake names and email addresses, while posing as prospective and former clients of Plaintiffs;

- Sending emails to Plaintiffs threatening physical harm and lawsuits, where Bowyer used fake names and email addresses to send the harassing content;

- Calling Plaintiffs and pretending to be prospective clients so that Plaintiffs could expend time and resources to investigate the alleged claims made by Bowyer posing as prospective client;

- Using Plaintiffs' name and email address to sign them up for numerous website newsletters which resulted in over 1,000 spammed emails to be sent to him.  In fact, Plaintiffs still receive some of these emails to this very day; and

- Using RK's personal telephone number to send him numerous and extensive "spam" text messages.

(ECF 40, ¶ 11).

### Bowyer's Defamatory and False Reviews

The harassing false and defamatory reviews by Bowyer claimed that RK could not speak English fluently, spoke with a "Chinese" accent, and could not effectively communicate with clients; that Plaintiffs stole money from clients; that Plaintiffs were subject to sexual harassment claims; and that multiple complaints were filed against Plaintiffs with various federal and state agencies such as the FTC.  (ECF 40, ¶ 12).  All of these claims by Bowyer are false and defamatory.  (ECF 40, ¶ 12).  The sole intent for the publication of these false statements was to

cause (which it did) reputational and financial harm. (ECF 40, ¶ 11-12).  Bowyer posted these reviews on Google, Facebook, Avvo, Yelp and Martindale-Hubble.[1]

For example, some of Bowyer's reviews in May 2018 consisted of the following false and defamatory statements:





I know there have been a lot of recent reviews calling Richard Kim a "compulsive liar," or a "thief" or "unethical," but I haven't noticed those things. Personally, I just think Rich Kim is really bad at legal writing and legal analysis, as compared to the vast majority of other attorneys I have met.





I'm not sure how else to put this other than to outright say that I think Rich Kim may be racist. I don't think it's fair or legal to only represent clients that are also from China, as there is a chance that maybe this firm has started doing just that recently. I know I can't communicate in Mandarin with Mr Kim, but I still think I should be considered as a potential client.



---

[1]    For the sake or brevity, Plaintiffs have not recited each and every defamatory statement that was posted by Bowyer, as they are set forth in the Complaint.



**Rickie Benson**
54 mins ago

 It is my own personal belief that the owner of this Firm may sexually harass his female employees, is a compulsive liar who cannot be trusted, is emotionally unstable with anger management issues, and possibly steals money from his clients. And please note that I have even been forced to submit this review under a pseudonym because I am afraid of contract language that may lead to financial penalties (i.e. a "gag clause") against posting negative reviews.

⬅ Reply



**Evan Gould**
7 reviews

 12 hours ago

It's my understanding that The Kim Law Firm has never won a jury award for any consumer protection clients. ... More

 4



**Kevin Lancaster**
4 reviews

 12 hours ago

I can't confirm yet if this is definitely accurate, but it seems like it might possibly be the case that Rich Kim could have violated the terms of an immigrant work visa. While I think it is important to have a Philadelphia firm run by a Chinese native who is fluent in Mandarin Chinese, I don't like the idea of a firm owner being in violation of strict US immigration laws - I will update this posting after I have confirmed whether the above is indeed accurate.

 5



**A Google User**
3 reviews

 a day ago

An engagement letter may prevent me from saying anything specifically negative here, so I all I can say is that you should answer this question for yourself:      if an attorney has been fired/laid off from multiple law firms in the past (and if he is unable to obtain employment anywhere else in the entire city), does that mean that this attorney is then qualified to start his own law firm?

Just make sure to do your own research and be careful who you hire as your attorney.



(See id., ¶ 21).

As detailed throughout the Complaint, the names used by Defendant Bowyer to post the reviews online were never prospective clients, actual clients, or employees of KLF.  (ECF 40). The representations made by the Bowyer under these aliases is false and defamatory. (ECF 40, ¶ 12).  Bowyer created these false names and reviews to harm Plaintiffs' reputation and undermine their business. (ECF 40, ¶ 12).  Only after the expenditure of significant time and resources were Plaintiffs able to eventually have some of the reviews that were posted by Bowyer removed. (ECF 40, ¶ 41).

Despite the eventual removal of some of those May 2018 reviews, with repeated precision, typically within 24 hours of a review being removed, Bowyer would then have new false and defamatory reviews posted. (ECF 40, ¶ 42).  Not only would Bowyer post new reviews taking the place of the reviews that were removed, but he would include additional new false and defamatory reviews. (ECF 40, ¶ 42).  Bowyer's reviews (posted under different pen names) continued to consist of false and defamatory statements claiming that: (i) *RK is fluent in Mandarin and violated an immigration work visa*; (ii) Plaintiffs sexually harassed employees; (iii) Plaintiffs stole money from clients; and that (iv) Plaintiffs are racist and "only" represent Chinese clients. (ECF 40, ¶ 40).  Bowyer posted all of these reviews knowing they were false, especially given RK's Korean (and not Chinese) heritage.  (ECF 40, ¶ 40).

Bowyer was so obsessed with harming Plaintiffs' reputation and business, that he even posted reviews online to undermine existing positive reviews posted by actual clients of KLF. (ECF 40, ¶¶ 25-28).  In June 2018, KLF Plaintiffs had positive reviews posted on Google from former clients Gary Moretsky and Raman Patel. (ECF 40, ¶ 44).  Bowyer, however, attempted to undermine those positive reviews by publishing false and defamatory reviews under the same names of the actual clients, and claimed that the new reviews were "updates". (ECF 40, ¶¶ 44-45).  The real Gary Moretsky and Raman Patel never posted the negative reviews which are claimed to be "updates". (ECF 40, ¶¶ 44-45).  If a reviewer on Google desires to change a prior published review, there is no need to post an entirely new review. (ECF 40, ¶ 45).  The author of the review may simply edit the prior review. (ECF 40, ¶ 45).  Defendant Bowyer's behavior and reviews extended to posts on Avvo as well.

In May 2018, Defendant Bowyer wrote "anonymous" reviews that were set forth in paragraphs 52 of the Complaint, including stating that Mr. Kim is a first generation Chinese immigrant.

### Bowyer's Emails and Telephone Calls to Plaintiffs

While Bowyer was posting the false and defamatory reviews noted above, Bowyer was also sending Plaintiffs numerous disturbing emails claiming, among other things, that Plaintiffs were the subject of "sexual harassment" claims would soon be filed against them along with a "soon pending" disciplinary action by the Pennsylvania Disciplinary Board.  (ECF 40, ¶ 58)

Bowyer also sent an email from the created email account of "Wanda Xing" (shiongingXing453Xing@gmail.com). (ECF 40, ¶ 59.).  That email was initially written in the context of being a potential client, but then threatened Plaintiffs by stating that there was a sexual harassment claim that was going to be filed against them.

8

During Bowyer's time of employment with Plaintiffs, it was discussed on several occasions that RK resided within only a few blocks of "Trader Joes" located at 21st and Market in Philadelphia, PA.  (ECF 40, ¶ 65).  Bowyer used that knowledge to send Plaintiffs an email threatening to harm RK.  On May 10, 2018, Bowyer sent an email under the pen name "Jackie J.".  That email from Bowyer stated the following:

[remainder of page intentionally left blank]

| | |
|---|---|
| **From:** | "Kim Web" |
| **To:** | Richard Kim |
| **Subject:** | [Kim Lawfirm Web] New Message! |
| **Date:** | Thursday, May 10, 2018 4:18:19 PM |

From: Jackie Johnson <JackJohnJohnson129019134@aol.com>
Subject: Debt Collector Notice

Message Body:
Hello, I just received a disturbing phone call from a debt collector, who threatened me with the following:

--You have 30 days to pay the debts you owe to multiple ex-clients.  You promised large awards, but they only received small settlements (of which you took in inappropriately large percentages).
--If you do not comply, your online reviews will be lowered to 1 across all sites, and we will take additional measures to make sure you never obtain another client ever again, and your company will be forced to close and file for bankruptcy.
--No less than 5 complaints will be filed against you in federal and state court.
--We will work with the government to ensure you lose your professional licenses and that you are brought up on charges of legal malpractice for failing to follow through on promises made to clients.

I simply do not know what to make of this phone call.  It has really scared me.  I personally do not owe any debts to anyone (and honestly have NEVER owed any debts to anyone).  I have never owned a company or firm, and have never represented clients.  I also do not have a website online that someone can post negative reviews about.  How do I convince these debt collectors that they have me mistaken?  One debt collector has even told me over the phone that he knows where I live "near Trader Joes," and that he will send one of his "associates" to follow me home "to have a friendly and civil discussion with me about the multiple debts that" I owe! Is this legal for a debt collector to threaten me like this?  Should I voice-record the next phone call I receive from them?  I haven't looked into my credit reports yet to check if they are affected, so I am assuming I should do that?  Or should I just give you my information, and you can look at my credit reports for me?  Lastly, are you able to contact these debt collectors directly on my behalf, and if so, would it be in a letter or possibly a court issued injunction?

Thank you so much for your help, it means the world to me to have a firm like you able to look out for someone like me in a terrible position like this.

Lastly, if you could please make sure that Richard Kim personally reads my message and responds to me, I would really appreciate it.  I have heard such wonderful things about his representation, and I am confident that he can make these debt collectors go away and have their records fixed very promptly.  He was highly recommended to me at a cocktail party last week in Marlton, NJ by my neighbor Mike Bloom (although I think it was one of his brothers-in-law who had actually hired Mr. Kim), and I was advised that he should be able to personally fix this problem in no time.

Warm Regards-- Jackie J.

--
This e-mail was sent from a contact form on The Kim Law Firm, LLC (http://thekimlawfirmllc.com)

(ECF 40, ¶ 64).

On May 24, 2018, Bowyer sent another email to Plaintiffs under the name "Marcus Reuter", the same exact name that he used in posting a false and defamatory Google review,

which is set forth above.  Marcus Reuter, like the other "reviewers", was never a prospective

client or actual client of Plaintiffs, and no complaint, let alone multiple complaints, were ever

filed with the FTC. (ECF 40, ¶ 61).

Bowyer also used RK's personal cell phone number to send him spam text messages.  RK

received approximately 50 if not more spammed text messages that were caused to be sent by

Bowyer. (ECF 40, ¶¶ 11, 67).  Plaintiffs lost significant time, business and revenue over the

months that Bowyer was engaging in his criminal and lawless behavior.  Plaintiffs also expended

significant finances in attempting to remove the false and defamatory statements published

online by Bowyer. (ECF 40, ¶ 68).

### Bowyer's Admissions and the Information from the Subpoenas

Bowyer attempted to mask the fact that he was the author of the published false and

defamatory statements, some of which are referenced above, by using fake email addresses and

fake names (*i.e.*, pen names). (ECF 40, ¶ 69).  Although Bowyer attempted to further shield his

identity by masking his Internet Protocol address ("IP Address") through the use of a Virtual

Private Network ("VPN"), he was unsuccessful in hiding his identity. (ECF 40, ¶ 70).  Plaintiffs

served foreign subpoenas upon Facebook, Google, and Avvo, and the responses to those

subpoenas revealed the IP addresses of the anonymous posters, some of which were obscured by

the use of a VPN.  (ECF 40, ¶ 71).  Some of the IP addresses, however, were not obscured by a

VPN and they all pointed back to Bowyer as the author of the anonymous postings. (ECF 40., ¶

71).

The John Doe defendant initially named in this Action was later identified as Mr. Bowyer

in a reissued writ of summons, which was personally served upon Mr. Bowyer on September 10,

2018 at 7:43 p.m. (ECF 40, ¶ 72).  On the evening of September 10, 2018, Mr. Bowyer sent text

messages to RK, which admitted he was the author of the defamatory postings.  (ECF 40, ¶ 73).

One of the text messages from that night states the following:

> *I swear on my life I will make this right*.  *__I will do whatever it takes__*.  But please Rich, I can't mentally or physically handle a court case.  It will literally kill me.  __Please give me the chance to make this right__.  I swear to god [sic] everything has changed for me after my hospitalization.  I just want to be thankful to god [sic] that I'm still here and be good to my wife, that's it.  Please let me make this right…

(See id., ¶ 73) (emphasis added.)

The same night the texts were sent, Bowyer also reaffirmed his wrongdoing in a voicemail left on the cell phone of RK.  (ECF 40, ¶ 75).  Further confirming his guilt, on September 17, 2018, an attorney named Sidney Gold, Esquire called undersigned counsel, stating he was counsel calling on behalf of for Mr. Bowyer and that Mr. Bowyer had admitted to being the author of the online postings. (ECF 40, ¶ 76).

On May 29, 2018, Plaintiffs filed a Complaint against Bowyer in the Philadelphia Court of Common Pleas (the "State Court Action").  (ECF 3, Exhibit "1").  Plaintiffs alleged, like in this case, that Bowyer committed the intentional torts of defamation; commercial disparagement; intentional infliction of emotional distress and identity theft.  Bowyer filed Preliminary Objections to the Second Amended Complaint on February 4, 2019 arguing that each of the claims should be dismissed and that the alleged settlement negotiations were inadmissible should be stricken from the Complaint.  By Order dated February 28, 2018, the Honorable Gary Glazer overruled each of Bowyer's preliminary objections.  Bower filed an Answer to the Second Amended Complaint on April 2, 2019, which consisted of general denials of the allegations of the Second Amended Complaint, followed by the invocation of the Fifth Amendment privilege against self-incrimination.  (ECF 40, ¶ 16).  Bowyer failed to produce discovery and after significant motion work Bowyer was required to produce discovery to Plaintiffs or face

sanctions. (ECF 40, ¶¶ 17-20). The afternoon that Bowyer was required to produce the court ordered discovery, including all of his electronic devices with their passwords, he filed for Bankruptcy protection. (ECF 40, ¶ 28).

On October 11, 2019, Plaintiff filed the Adversary Complaint to have the claims of Plaintiffs exempted from discharge. (ECF 40). On November 14, 2019, Bowyer filed the present Motion (ECF 6). On November 21, 2019, Bowyer filed a Notice of Motion. (ECF 7).

## III. **ARGUMENT**

### a. **Standard of Review**

Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[3] The standard of review for a motion to dismiss under Rule 12(b)(6) is an extremely liberal standard favoring plaintiffs. The basis for this liberality is to allow a determination to be made on the full merits of the case. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). Generally, in the context of a 12(b)(6) motion, "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Thus, in order for a motion to dismiss for failure to state a claim to be appropriately granted it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema, NA*, 534 U .S. 506, 514 (2002) (citation omitted).

Moreover, when a court undertakes its limited task in reviewing a complaint when considering a motion to dismiss, the court must accept as true all allegations in the Complaint

---

[3]   Rule 12(b)(6) "is made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7012." *Stambaugh v. Stambaugh (In re Stambaugh)*, 533 B.R. 449, 453 (Bankr. M.D. Pa. 2015).

and draw all reasonable inferences in the light most favorable to Plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Beyond the mandate that the court must accept all well-pled allegations of the complaint as true, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the Plaintiff. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "The inquiry is not whether [Plaintiff] will ultimately prevail in a trial on the merits, but whether [he] should be afforded an opportunity to offer evidence in support of [his] claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The Third Circuit has made clear that "[a] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### b. Plaintiffs' Complaint Complies with Rule 12(f) and Does Not Contain Redundant, Immaterial, Impertinent, or Scandalous Matter.

Federal Rule of Civil Procedure 12(f) ("Rule 12(f)") allows courts to strike from a pleading "any redundant immaterial, impertinent, or scandalous matter." A Rule 12(f) motion to strike matter from a pleading is disfavored generally. *See, e.g., Miller v. Group Voyagers, Inc.*, 912 F. Supp. 164, 168 (E.D. Pa. 1996); *North Penn Transfer, Inc., v. Victaulic Co. of Amer.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994); *Great West Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993); *Charles A. Wright et al., Federal Practice and Procedure* § 1380 at 647 (2d ed. 1995) [hereafter "Fed. Prac. & P."]. For that reason, courts have required the moving party to demonstrate ***prejudice*** in order to justify an order to strike matter from a pleading. *See, e.g., Miller*, 912 F. Supp. at 168; *North Penn Transfer, Inc.*, 859 F. Supp. at 158*; Great West Life Assur. Co.*, 834 F. Supp. at 864; Fed. Prac. & P. § 1382 at 682.

Pursuant to Rule 12(f), Defendant argues for the dismissal of the Complaint by broadly claiming that "the Second Amended Complaint [*sic*][4] contains several allegations that are scandalous and impertinent...." (Def.'s Motion, pgs. 5-6).  Although Defendant has claimed that Plaintiffs' Complaint includes "scandalous" allegations, Bowyer has failed to cite any language from the Complaint that is outrageous, or how that language has caused any prejudice.  if Defendant is referencing Bowyer's racist and defamatory conduct, reciting the facts detailing those actions are appropriate to demonstrate the basis of Plaintiffs' allegations as well as to support the request for punitive damages. *See Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)); *see also Hoffman v. Paper Converting Machine Co*., 694 F.Supp.2d 359, 374 (E.D.Pa. 2010) ("Under Pennsylvania law, punitive damages are appropriately awarded when a defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others.") (citation omitted) (emphasis added.). Punitive damages are not compensatory in nature but are meant "to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious." *Phillips v. Cricket Lighters*, 883 A.2d 439, 446 (Pa. 2005).  As such, any reference to Bowyer's conduct is directly relevant to establishing punitive damages and is not scandalous or impertinent.

As explained further below, the only viable basis for asserting any portion of the Complaint to be stricken under Rule 12(f) is claiming that certain portions of the Complaint are immaterial.  Defendant's arguments, however, still fail as he fails to establish that the purported paragraphs are immaterial or how they are prejudiced.  At best, they claim that a jury might be

---

[4]    There was only the initial Complaint that was filed in this case.  It is therefore assumed that Defendant's repeated references to the "Second Amended Complaint" are intended to be directed to Plaintiff's Complaint.

"inflamed," but that is a premature issue to be considered by way of motion in limine, not a motion to dismiss.

### i. Paragraphs 73-80 Do Not Constitute Confidential Settlement Communications Under Federal Rule of Evidence 408.

Defendant argues that Paragraphs 73-78 of the Complaint should be stricken as immaterial since they cannot be introduced as evidence pursuant to Federal Rule of Evidence 408 ("FRE 408"). (Def's Motion, pgs. 6-9).   As explained below, those paragraphs were unprovoked admissions and did not accompany any settlement offer.   Those paragraphs in the Complaint state as follows:

73.    On the evening of September 10, 2018, Mr. Bowyer sent text messages to RK, which admitted he was the author of the defamatory postings.   One of the text messages from that night states the following:

> *I swear on my life I will make this right*.   **_I will do whatever it takes_**.   But please Rich, I can't mentally or physically handle a court case.   It will literally kill me.   **Please give me the chance to make this right.**   I swear to god [*sic*] everything has changed for me after my hospitalization.   I just want to be thankful to god [*sic*] that I'm still here and be good to my wife, that's it.   Please let me make this right…

74.    On the evening of September 10, 2018, Bowyer also reaffirmed his wrongdoing in a voicemail left on the cell phone of RK.

75.    Bowyer's September 10, 2019 voicemail stated in relevant part: "I want to make this right.   I never thought anything was going to court.   I was just bluffing. I got bad advice from one of the attorneys. . . . I just want everything to go away. I want my case - - I want to make this right. . . . Listen, please let me make this right with you.   I will try everything.   I will make this right for you. . . . I never thought it was going to go this far.   . . . I just want to do the right things.   I just want to get a second chance for life."

76.    On September 17, 2018, an attorney Sidney Gold, Esquire called the Plaintiffs' counsel, stating he was calling on behalf of Mr. Bowyer and that ***Mr. Bowyer had admitted to being the author of the online postings***.

77.    Subsequently, on or about October 8, 2018, Bowyer admitted that he could not recall all of the places he signed Plaintiffs up for emails and calls from and he requested that Plaintiffs provide him with a list of all places from which they are still being contacted.

78.    On or about October 8, 2018, Bowyer also admitted that he used a "burner phone" to engage in the activities described above and that he did not have a record of everything he had done to Plaintiffs.

(emphasis added) (ECF 40).

Bowyer's argument is unpersuasive and fails to recognize the facts of this case. Federal Rule of Evidence 408 governs the admissibility (or lack thereof) of settlement communications. Bowyer's communications, however, are not privileged settlement communications under Rule 408, but were admissions of guilt and a plea for mercy. *See* Federal Rule of Evidence 804(b)(3) ("A statement which was at the time of its making so far contrary to the defendant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, *that a reasonable person in the declarant's position would not have made the statement unless believing it to be true*…"); *Rain v. Pavkov*, 357 F.2d 506, 509 (3d Cir. 1966) ("It is the general rule that a plea of guilty to a charge of reckless driving is an admission against interest, and evidence thereof is admissible in an action for personal injuries based upon the same facts and circumstances from which the charge arose. ").

Bowyer never provided any potential terms to resolve the action – either financial and/or equitable. Bowyer made the confession in the hope that his admission of guilt would result in some type of mercy or leniency from Plaintiffs. "I will do whatever it takes" was not a settlement offer, but a hope of clemency. The inception of settlement negotiations involves a discussion of the strengths and weaknesses of a case, along with proposed equitable and monetary relief that are appropriate given those considerations. Settlement communications do

not involve a flat-out admission of guilt unaccompanied by any offer to resolve a lawsuit.  Again, there was no proposed settlement terms in any of Bowyer's communications – they were simply an admission of guilt with a request for leniency.

Defendant has cited several cases in support of his contention that paragraphs 73-78 should be considered privileged settlement communications, thus stricken from the Complaint: *Bergman v. Jefferson-Pilot Life Ins. Co.*, No. 03-4459, 2003 U.S. Dist. LEXIS 23689, 2003 WL 23142155, at *1 (E.D. Pa. Dec. 30, 2003); *Scott v. Twp. of Bristol*, No. 90-1412, 1991 U.S. Dist. LEXIS 3303, 1991 WL 40354, at *5 (E.D. Pa. Mar. 20, 1991); *Agnew v. Aydin Corp.*, No. 88-3436, 1988 U.S. Dist. LEXIS 9911, 1988 WL 92872, at *4 (E.D. Pa. Sept. 6, 1988).  Each and every one of those cases is distinguishable from this matter materially because they did not involve a situation where a party flatly confessed guilt, which is not a settlement communication but an admission.

If any portions of the subject paragraphs are considered settlement communications (which they are not), then only the language that actually consists of the privileged communications should be stricken with Bowyer's admissions being allowed to be introduced into evidence. *See Vinson v. Humana, Inc.*, 190 F.R.D. 624, 627 (M.D.Fla. 1999) (stating that information not pertaining to substance of communications is outside scope of privilege).  Here, the only arguable settlement communication in the paragraphs would be when Bowyer is referenced as having written "I will do whatever it takes".

Accordingly, there is no basis to strike any of the paragraphs requested by Bowyer from the Complaint as being settlement communications.

## ii. Bowyer has No Basis for Striking Paragraphs Referencing His Admissions in the State Court Action.

Bowyer does not argue that references to his Manifesto (ECF 40, ¶¶ 24-26), wherein he explained in writing what actions he took and why he took them, cannot be made in the Complaint.   Instead, Bowyer argues that it is inappropriate to allege that Bowyer judicially admitted to sending the Manifesto by virtue of requests for admissions being deemed admitted, which is a premature evidentiary argument that should be raised in a motion in limine.   Bowyer cannot escape the well pled allegations that he is the author of the Manifesto, wherein he explains in detail that he was trying to destroy Plaintiff's business and make sure RK never obtained another client.  (ECF 40, ¶¶ 24-26).

A Bankruptcy Court is permitted to review occurrences and references to any related case that may assist in evaluating a claim under Title 11 of the United States Code, Section 523(a)(6) ("Section 523(a)(6)").   The evaluation of related actions assists a Bankruptcy courts determine the existence of willfulness and maliciousness, discussed further below. *See Ross v. Stranger (In re Stranger)*, 2013 Bankr. LEXIS 5068, at *2 (Bankr. M.D. Fla. Nov. 5, 2013); *Stambaugh v. Stambaugh (In re Stambaugh)*, 533 B.R. 449, 454 (Bankr. M.D. Pa. 2015).

In *Stranger*, a debtor moved to dismiss a plaintiff's claim under Section 523(a)(2)(A) for, among other reasons, because factual support of the adversary complaint was based on an underlying state court action.   The court in *Stranger* determined that reliance on a related state court action was proper for it to evaluate the plaintiff's Section 523(a)(2)(A) and held that "Plaintiff may permissibly rely on attached and incorporated materials in support of her claim…". *Ross v. Stranger (In re Stranger)*, 2013 Bankr. LEXIS 5068, at *2 (Bankr. M.D. Fla. Nov. 5, 2013).   The Court went on to further state that "[a]ll of those allegations [from the state court action]…support the elements of a § 523(a)(2)(A) claim. And because the allegations were

19

incorporated in the Complaint herein, the Court finds that Plaintiff has sufficiently pleaded a cause of action under § 523(a)(2)(A)." *Id.*

Similarly, in *Stambaugh*, the debtor moved to dismiss a plaintiff's claim under Section 523(a)(2)(A) for, among other reasons, because of the plaintiff's use of documents and docket entries in a separate Chapter 13 case. The court determined that it was proper for plaintiff to rely on these documents and docket entries and reasoned as follows:

> When considering a motion to dismiss, the court considers the complaint, as well as attached exhibits and matters of public record. Fed. R. Bankr.P. 7010 (incorporating Fed. R. Civ. P. 10(c) ). *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993); *Taylor v. Henderson*, 2015 WL 452405, *1 (D.Del., Jan. 30, 2015). Also, Federal Rule of Evidence 201 allows the court to take judicial notice of facts that are not subject to reasonable dispute. A bankruptcy court may take judicial notice of the docket entries in a case and the contents of the bankruptcy schedules to determine the timing and status of case events as well as facts not reasonably in dispute. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr.D.S.C. 2008); *In re Paolino*, 1991 WL 284107, *12, n. 19 (Bankr.E.D.Pa., Jan. 11, 1991). I will take judicial notice of the dockets in the Debtor's underlying Chapter 13 case and in this Adversary Proceeding. I will take judicial notice of the contents of the bankruptcy schedules which are not in dispute.

*Stambaugh v. Stambaugh (In re Stambaugh)*, 533 B.R. 449, 454 (Bankr. M.D. Pa. 2015)

Here, considering the attachments and admissions in the State Court Action will allow this Court to properly consider Plaintiff's claim that Bowyer's liability is not exempt from discharge pursuant to Section 523(a)(2)(A). Furthermore, during Bowyer's partial deposition in the State Court Action, Bowyer continuously stated in response to Plaintiffs' questions that he would not respond based on the 5th Amendment. (ECF 40, ¶ 28). Thus, it is anticipated that Bowyer will again plead the 5th Amendment, entitling Plaintiffs to an adverse inference at the time of trial that Bowyer was the author of all of the postings and communications, and that this Motion was filed to delay filing an answer to the Complaint.

Bowyer has failed to demonstrate the necessary prejudice in alleging details of the Manifesto at this time. *See, e.g., Miller*, 912 F. Supp. at 168; *North Penn Transfer, Inc.,* 859 F. Supp. at 158; *Great West Life Assur. Co.*, 834 F. Supp. at 864; Fed. Prac. & P. § 1382 at 682. At best, Bowyer claims that these facts might "inflame" a jury, but that argument does not demonstrate prejudice at this stage of litigation and should be the subject of a motion in limine.

Accordingly, there is no basis to strike Plaintiffs' references to Bowyer's Manifesto or accompanying attachments to the Complaint.

### c.  <u>Bowyer Willfully and Maliciously Injured Plaintiff</u>.

A review of the Manifesto, demonstrates unequivocally that Bowyer engaged in the course of conduct in order to cause willful and malicious injury to Plaintiffs. (ECF 40, ¶¶ 26, 60). Bowyer spells out in his Manifesto exactly what he did and what the intent was of his course of conduct – to cause a malicious injury. (ECF 40, ¶¶ 26, 60).

Section 523(a)(6) provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order to constitute a willful injury under 11 U.S.C.S. § 523(a)(6), the United States Court of Appeals for the Third Circuit has held that a debtor must act with the purpose of producing injury or with substantial certainty of producing injury." *Corcoran v. McCabe (In re McCabe)*, 559 B.R. 415, 427 (Bankr. E.D. Pa. 2016) (citing *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994)).

Malice, on the other hand, "encompasses an injury that is 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will.'" *In re Malloy*, 535 B.R. 81, 89 (Bankr. E.D. Pa. 2015) (quoting *In re Jacobs*, 381 B.R. 128, 136, 138–39 (Bankr. E.D. Pa.

2008) *aff'd*, 2016 WL 2755593 (E.D. Pa. May 11, 2016)). "The burden of proving that a debt is nondischargeable under § 523(a) is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence." *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Here, Plaintiffs have asserted a cavalcade of facts establishing that Bowyer willfully and with malice injured Plaintiff. The Manifesto alone establishes Bowyer's actions were taken so that Plaintiffs "will never obtain a single customer ever again" and to "destroy [Plaintiffs'] business." (ECF 40, ¶¶ 26, 60). The defamatory reviews were set forth in the Complaint (ECF 40), as well as the Second Amended Complaint that was attached as Exhibit "1" to the Complaint. Those defamatory reviews by Bowyer were false because they claimed RK could not speak English fluently, that RK spoke with a "Chinese" accent, and could not effectively communicate with clients; that Plaintiffs stole money from clients; that Plaintiffs were subject to sexual harassment claims; and that multiple complaints were filed against Plaintiffs with various federal and state agencies such as the FTC.

Despite the plain and egregious wrongdoing by Bowyer, he now incorrectly alleges that Plaintiffs' Complaint must be dismissed because "Plaintiffs' Complaint relies upon the request for admissions in alleging that Defendant acted willfully and maliciously." (Def.'s Motion, pg. 14). Bowyer ignores that the underlying facts that the State Court deemed admitted were alleged in the Complaint, thus for the purposes of pleading, it is immaterial whether those allegations were deemed admitted and have a res judicata effect. Bowyer is trying to take what should be a motion in limine and convert it into a motion to dismiss. As noted above, and further below, the willful and malicious actions of Bowyer are alleged all throughout the Complaint and do not

solely rely on the Request for Admissions in the State Court Action.  The information regarding

Bowyer's admission that he sent the Manifesto merely serves to supplement Plaintiffs' claims.

The purpose of the Bankruptcy Code would not be served by allowing an individual like

Bowyer – whose liability is premised on intentional torts engaged in for the purpose of

destroying a lawyer's career – avoid prosecution based on Plaintiffs' allegations. *See Corcoran*

*v. McCabe (In re McCabe)*, 559 B.R. 415, 427 (Bankr. E.D. Pa. 2016) (holding that the

"Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs

and obtain a 'fresh start,' unburdened by the weight of preexisting debt…").

Accordingly, Bowyer has no basis to request that any portion of the Complaint be

stricken.

### d. Plaintiffs' have Properly Alleged a Claims for Defamation, Commercial Disparagement, and Identity Theft

Bowyer argues that Plaintiffs failed to set forth underlying prima facia causes of action,

but fails to even argue the Plaintiffs did not set forth causes of action for identity theft.  Thus,

Bowyer has not sought to dismiss the Complaint on the basis it does not assert a claim for willful

and malicious injury caused by identity theft.  As explained below, Plaintiffs alleged prima facie

cases of defamation and commercial disparagement.

Bowyer argues that Plaintiffs' defamation claims should be dismissed. (Def.'s Motion,

pgs. 14-15.)  Like Bowyer's other arguments, this position has no merit.  A claim for defamation

consists of a showing of the following elements: (i) the defamatory character of the

communication; (ii) its publication by the defendant; (iii) its application to the plaintiff; (iv) the

understanding by the recipient of its defamatory meaning; (v) The understanding by the recipient

of it as intended to be applied to the plaintiff; (vi) special harm resulting to the plaintiff from its

publication; and, if applicable (vii) abuse of a conditionally privileged occasion. 42 Pa.C.S.

8343.  Plaintiffs have alleged a prima facie case of each and every element of their defamation claim within the Complaint.  Here, Plaintiffs have stated the exact text of the defamatory reviews that were published online by Bowyer.   Those defamatory reviews by Bowyer were false because they claimed RK could not speak English fluently, that RK spoke with a "Chinese" accent, and could not effectively communicate with clients; that Plaintiffs stole money from clients; that Plaintiffs were subject to sexual harassment claims; and that multiple complaints were filed against Plaintiffs with various federal and state agencies such as the FTC.  Those false reviews are not ambiguous and were understood by all individuals that read them.  And without question, those false and defamatory statements published by Bowyer harmed Plaintiffs' reputation and standing in the community, caused personal humiliation, and mental anguish and suffering.

Bowyer's willful and malicious actions are precisely the type of wrongdoing that Section 8343 was intended to protect against.  Bowyer engaged in a scorched earth campaign of character assassination to destroy Plaintiffs' life and livelihood, and as alleged in the Complaint, Bowyer was successful in causing extreme harm.  Now that the time has come to face the consequences of his actions, Bowyer attempts to evade the merits of this case.  As noted above, a motion to dismiss requires Plaintiffs' facts to be taken as true.

Plaintiffs' Complaint has specifically cited the exact false and defamatory statements that were made, the months that they were made, the reasons they were false and defamatory, the pen names used by Bowyer to in posting those reviews, and the different forums (Google, Avvo, etc.) the false reviews were published.  In the face of all these details it is not credible for Bowyer to claim that these facts were not cited.  Further, as noted above, Bowyer is well-aware of the wrongdoing asserted against him as he has **admitted** to this wrongdoing.  For Bowyer to

proclaim that the Complaint is so lacking in specificity requiring that it be dismissed is not supported by law.[6]

Likewise, Plaintiffs have properly alleged a claim for commercial disparagement.[7]  Under Pennsylvania law, a plaintiff must show that the defendant published a statement about plaintiff's business that was: (i) false; (ii) that the publisher either intended the publication to cause pecuniary loss or reasonably should have recognized that publication would result in pecuniary loss; (iii) the pecuniary loss did in fact result; and (iv) the publisher either knew the statement was false or acted in reckless disregard of its truth or falsity. *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243 (Pa. 2002) (citing Restatement (Second) of Torts § 623(A)).  As set forth above, Plaintiffs have alleged in the Complaint that Bowyer has published online numerous false statements regarding Plaintiffs including their: ability to practice law; theft of client funds; sexual harassment claims; lawsuit by the FTC; immigration work status; and ability to communicate fluently in English.  Plaintiffs have also alleged that Bowyer intended and caused pecuniary loss, and that Bowyer knew that his statements were false (see above discussion of Bowyer's mental health).

Accordingly, Bowyer has no basis for requesting that the Court dismiss these claims.

### e. Plaintiffs' have Properly Alleged for Intentional Infliction of Emotional Distress.

Defendant alleges that Plaintiff's claim for intentional infliction of emotional distress should be dismissed as a matter of law.  (Def.'s Motion, pgs. 16-18).  Section 46 of the

---

[6]    Even if Bowyer's arguments had any merit, which they do not, dismissal of any claims for lacking specificity is not the correct relief to request.  The requested relief should be dismissal of the count with leave to amend.

[7]    In Def.'s Motion, Bowyer claims that Plaintiff has not established a cause of action for defamation.  Ironically, however, Bowyer fails to discuss in any respect Plaintiffs' claims for commercial disparagement claim or identity theft.

Restatement (Second) of Torts states that a claim for intentional infliction of emotional distress is established through a showing of "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See Taylor v. Albert Einstein Medical Center,* 754 A.2d 650 (Pa. 2000).   Def.'s Motion once again misses the mark in requesting dismissal of this claim as RK has set forth in the Complaint numerous instances of intentional wrongful conduct by Bowyer which caused RK extreme emotional distress.

Here, RK has alleged the following facts that constitute Bowyer's outrageous conduct: (i) that Bowyer posted numerous reviews constituting racist slurs against RK, including but not limited to the false assertions that RK only represents Chinese clients; that RK speaks only Mandarin; that RK is subject to some type of immigration Visa; (ii)  false allegations of sexual harassment suit being lodged against RK; (iii) attorney misconduct; and (iv) sent RK emails claiming that RK was subject to a suit by the FTC; and (v) *Bowyer even threatened RK physically*.  This threat and the false assertions were intentionally made to torture and harass RK. Furthermore, Bowyer published these false representations online so that he could destroy RK's livelihood as an attorney.  For Bowyer to argue that his outrageous actions did not cause RK significant emotional distress ignores the facts that were pled.  The truth is, Bowyer's actions are the exact type of situation that a plaintiff is intended to utilize a claim for intentional infliction of emotional distress.

Accordingly, Bowyer has no factual or legal basis to request the dismissal of this claim.

       **f.**   <u>**Plaintiffs Properly Served the Complaint.**</u>

Bowyer asserts the technical argument that this action should be dismissed because, despite his attorney being served by ECF and Federal Express, he was not properly served with

the Complaint because he received it by Federal Express and not "first class mail". (Def.'s Motion, pg. 18).  As explained below, this technical argument is now moot, as Bowyer was served via first class mail.  *See* ECF 8.  Federal Rule of Bankruptcy Procedure Rule 7004 provides that service of a complaint may be made by first class mail *or* by the methods set forth in Federal Rule of Civil Procedure Rule 4(e)-(j) ("Rule 4").  Rule 4(e)(2)(A), (B) and (C) provides that service may be effectuated by: delivering a copy of the complaint to the individual personally; by leaving a copy at the individual's dwelling; or by delivering a copy of each to an agent authorized by law to receive service.  Plaintiffs served a copy of the Complaint to Bowyer personally by Federal Express, which is proper personal service pursuant to Rule 4(e)(2)(A).

More importantly, the Bowyer's technical argument is now moot because Bowyer was served the Complaint by first class mail, as demonstrated by the certificate of service filed with the Court on November 11, 2019 at ECF 8.  Bowyer was served with the Complaint by first class mail within 120 days, as required by Bankruptcy Rule 7004.  (ECF 8).  Accordingly, there is no basis for dismissing Plaintiffs' Complaint for any alleged failure to serve the Complaint.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion should be denied in its entirety.

Respectfully submitted,

**OFFIT KURMAN, P.A.**

By: */s/Ryan N. Boland*
RYAN N. BOLAND, ESQUIRE
Pa. ID No. 202977
1801 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (267) 338-1312
E-mail: rboland@offitkurman.com

Dated: December 2, 2019