IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| JAMES FITZGERALD BOWYER, | : | Case No. 19-13113(MDC) |
| *Debtor.* | : | |
| THE KIM LAW FIRM LLC and RICHARD KIM, | : | Adv. No. 19-00200(MDC) |
| *Plaintiffs,* | : | |
| v. | : | |
| JAMES FITZGERALD BOWYER, | : | |
| *Defendant.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' RESPONSE TO
DEFENDANT JAMES FITZGERALD BOWYYER'S
MOTION TO SET ASIDE THE ENTRY OF DEFAULT**

Plaintiffs, The Kim Law Firm LLC and Richard Kim (collectively "Kim" or "Plaintiffs"), submit this memorandum of law in support of their Response to Defendant James Fitzgerald Bowyer's Motion to Set Aside the Entry of Default.

**I.     INTRODUCTION**

Defendant James Fitzgerald Bowyer ("Bowyer"), has been represented by Thomas Kenny, Esq. since Mr. Kenny entered his appearance on behalf of Bowyer in the litigation filed in the Philadelphia Court of Common Pleas on October 18, 2018.  Since that time period, Mr. Bowyer individually, and through his counsel in this proceeding, has done everything possible to obstruct Kim from obtaining discovery and from having to respond to the merits of Kim's allegations relating to Bowyer causing willful and malicious injury to Kim.  In fact, Bowyer filed

1

the bankruptcy petition on May 13, 2019, which was the day he had been ordered by the Philadelphia Court of Common Pleas to answer interrogatories, answer document requests, and produce all of his electronic devices and passwords. (ECF No. 3, Exhibit "3"). All of Bowyer's conduct was designed to delay filing an answer and commencing discovery, which is simply a continuation of his conduct since 2018 to delay Kim's ability to obtain discovery.

In the underlying action filed by Kim against Bowyer in the Philadelphia Court of Common Pleas (ECF Nos. 1 and 3) (the "Philadelphia Action"), Bowyer failed to timely file a responsive pleading to the Philadelphia Complaint on four occasions, three of which were while he had retained his present legal counsel, requiring Kim to serve notices pursuant to Pa.R.Civ.P. 237.1, that Kim would obtain a default judgment if an Answer was not filed within 10 days. *See* attached Declaration of Richard Kim, ¶ 6. Bowyer even failed to timely file an answer after the Philadelphia Court overruled his preliminary objections, requiring him to answer within 20 days. *Id.*

In the Philadelphia Action, Kim also had to file three discovery motions against Bowyer, seeking answers to interrogatories, answers to document requests, Bowyer's appearance at a deposition, Bowyer's production of his electronic devices and passwords, and Bowyer's verified answers to requests for admission and all three motions were granted. (ECF 3, Exhibits "2" and "3"). During Bowyer's two-hour deposition, he stated in response to every question that he was invoking his Fifth Amendment right against self-incrimination. (Kim Declaration, ¶ 7; ECF No. 3, Exhibit "2"). Bowyer then filed an answer to the Second Amended Complaint, wherein nearly every response was denied based upon Bowyer invoking his Fifth Amendment right against self-incrimination. (Kim Declaration,¶ 8). The invocation of the Fifth Amendment was done after Bowyer had already made countless admissions he had engaged in the conduct (ECF No. 1) and

2

after the Philadelphia Court of Common Pleas entered an order deeming Bowyer to have made a series of admission, including that: (a) he had send specific emails attached as exhibits; (b) he registered Richard Kim's email address to receive email newsletters with the registered name of Yellowskin Chinkbell; (c) he only stopped posting reviews when he discovered Kim had served subpoenas to link him to the anonymous postings; (d) he used a VPN to post reviews about Kim and send emails about Kim; (e) that he used an alternate "burner" phone to post reviews about Kim; and (f) he created the 35 online accounts listed in a request for admission. (ECF No. 1, ¶¶ 21-26). The defamatory reviews included that Richard Kim: (a) could not speak English fluently; (b) spoke with a "Chinese" accent; (c) was an illegal immigrant; (d) would only consider people of Chinese descent as clients; (e) stole money from clients; (f) was subjected to sexual harassment claims; and (g) has multiple regulatory complaints were filed against him. (ECF No. 1, ¶ 21).

Bowyer's conduct became so bold, he sent a manifesto to Kim (the "Manifesto"), wherein he admitted to his entire course of conduct and explained why he was engaging in the conduct. (ECF No. 1, ¶¶ 23-26). Excerpts of the Manifesto as set forth at paragraph 26 of the Adversary Complaint, ECF No. 1. In the Manifesto, Bowyer pretended to be a client in need of help, explaining exactly what Bowyer had done to Kim and why he had done it – to destroy the business. The Philadelphia Court of Common Pleas' entered an order deeming Bowyer to have admitted sending the Manifesto to harass or cause emotional harm to Kim.

When Bowyer filed the bankruptcy petition the day his Court Ordered discovery was due, he did so without including a creditors matrix. *See* Declaration of Richard Kim, ¶ 4. He then proceeded to file three motions seeking more time for filings, missed a meeting of creditors, and

3

then his September 12, 2019 meeting of creditors could not be concluded because he still needed to produce more documents. *Id.*

After this Adversary Proceeding was commenced, the Court entered a September 10, 2020 Order (ECF No. 14), granting in part Bowyer's motion to dismiss (after Kim filed a reply stating Kim did not object to the dismissal of an intentional inflection of emotional distress claim), yet Bowyer did nothing to timely file a responsive pleading. The Court entered an Order on July 6, 2021, Kim filed a request for a default that same day, which default was entered on July 7, 2021. (ECF Nos. 16-18). Thirty days passed after the default was entered before Bowyer's counsel took any action, which was when Bowyer filed this motion to set aside default. (ECF 23). Bowyer's counsel provided no affidavit or other evidence why he did not file an Answer prior to July 6, 2021 or why he then waited another 31 days to file this Motion. On that basis alone, the delay in seeking relief from the default, Bowyer's motion should be denied.

In sum, Bowyer's conduct of failing to timely file an Answer is not an isolated event, it is part of a course of conduct designed to frustrate and prejudice Kim, which has delayed Kim's ability to obtain discovery from Bowyer that should have been produced on May 13, 2019. Now, Bowyer claims at page 7 of his brief (ECF No. 23-2), that "Defendant denies having a recollection of posting each of the identified postings," establishing that the delayed has prejudiced Kim's ability to prove Bowyer's conduct.

## II.  STATEMENT OF FACTS

### A.  The Facts Alleged in the Adversary Complaint

The Adversary Complaint seeks to find claims against Bowyer for defamation, commercial disparagement, and identity theft that were pending in the Philadelphia Action were excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). (ECF No. 1). The Adversary

4

Complaint sets forth a summary of Bowyer's conduct, which consists of racist and false online posts about Kim on online review sites, that were designed to cause the business to fail. *Id.* The Adversary Complaint also explains how along with the reviews, Bowyer also used Richard Kim's email address and cell phone number to sign them up for thousands of spam texts and emails, in a hope to cause harm to their business and make their business communications lost in spam emails and texts, which constitutes identity theft. *Id.* The Adversary Complaint also explains that foreign subpoenas served upon Google, Facebook, and AVVO showed that most of the postings were done with the author's identity hidden through a VPN, but that some of the postings were made while not protected by a VPN, which pointed back to Bowyer. *Id.,* ¶¶ 70-71. The Adversary Complaint also details that Bowyer made a series of admissions to Mr. Kim as well as the undersigned counsel, admitting to being the author of the postings and that he used a "burner phone" to post many of them. *Id.*, ¶¶ 73-78. Rather than restate the content of the outrageous and racist conduct of Bowyer, the Adversary Complaint is incorporated by reference.

      **B.**      **Bowyers' Dilatory Conduct in the Court of Common Pleas**

The claims subject to the Adversary Complaint were filed in Philadelphia Action and that case remains pending. Bowyer and his counsel's course of conduct through that litigation was appalling and rather than address all of the misconduct of counsel involving failure to comply with discovery and attempts to delay Bowyer's and third-party's depositions, a portion of the uncontestable conduct is described below. The only reason this misconduct is being set forth herein is to counter Bowyer's contention that Bowyer and/or his counsel have not engaged in culpable misconduct. Bowyer took every action in the Philadelphia Action that he could to delay a decision on the merits, including the following.

5

### 1. Bowyer Failed to Timely File a Responsive Pleading Four Times

In the Philadelphia Action, Bowyer failed to file an answer to the original complaint, forcing Kim to serve a 10-Day Notice Pursuant to Pa. R. Civ. P. 237.1 ("10-day notice") upon Bowyer on October 10, 2018, which was the first of four 10-day notices served upon Bowyer. *See* Declaration of Richard Kim, ¶6. Bowyer had his present counsel in the Adversary Action enter their appearance on October 18, 2018 in the Philadelphia Action, they filed preliminary objections to the Complaint and they failed to timely file an answer to the First Amended Complaint, forcing Kim to serve a 10-day Notice on December 7, 2018. *Id.* After Kim filed a Second Amended Complaint, Bowyer's counsel failed to timely file an Answer, forcing Kim to serve a 10-day notice on January 24, 2019. *Id.* The Philadelphia Court overruled Bowyer's preliminary objections to the Second Amended Complaint and Bowyer's counsel failed to timely file an answer to the Second Amended Complaint, forcing Kim to serve a 10-day notice on March 21, 2019. *Id.*

### 2. Bowyer Refused to Cooperate with Discovery

In the Philadelphia Action, Bowyer refused to cooperate with discovery, necessitating the filing of three discovery motions, all of which were granted. (ECF No. 1, ¶¶ 17-20; ECF No. 3, Exhibits "2" and "3."). Bowyer asserted frivolous objections to document requests and interrogatories, causing Kim to engage in motion practice, which ended with the Court entering an Order granting all of Kim's discovery motions. (ECF No. 1, ¶¶ 16-20; ECF No. 3, Exhibits "2" and "3"). Bowyer left his deposition after two hours, refusing to answer questions relating to the document requests and merits of the case, with the only response being that he read a prepared statement asserting his 5th Amendment right because his answers could incriminate him. *Id.* After Kim filed a Motion to Strike Objections and Compel Defendant's Full and

Complete Answers to Interrogatories and Responses to Requests for Admissions, a Motion to Deem Requests for Admissions Admitted, Kim filed a third motion, wherein Kim sought relief due to Bowyer's leaving the deposition after two hours and failing to appear at the deposition with documents requested in the notice of deposition, as well as the granting of the two other pending motions. (ECF No. 3, Exhibit "2"). More specifically, the third verified motion Kim filed explained at paragraph 9 that "Mr. Bowyer's counsel concluded the deposition after two hours because he indicated he had a scheduling conflict, as he had another deposition he wanted to attend instead . . . ." *Id.*

On May 6, 2019, the Philadelphia Court entered an order granting all three motions filed against Bowyer. (ECF No. 2, Exhibit "3"). The May 6, 2019 Order required Bowyer to:

- Answer 31 document requests within 5 days;
- Answer 19 interrogatories within 5 days;
- Produce all documents and tangible things requested in document requests 1-16 identified in Bowyer's notice of deposition. The tangible items Bowyer had to produce includes all of his electronic devices, including computers, phones, flash drives, external hard drives and all passwords. The order further encompassed producing all electronic equipment he used to post reviews and his burner phone.
- Appear for a continued deposition on May 16, 2019

*Id.* The Order also deemed Bowyer's answers to Plaintiff's First Set of Requests for Admissions admitted as to the legal and factual assertions. *Id.*

Bowyer avoided his discovery obligations in the Philadelphia Action by filing a Voluntary Petition under Chapter 7 on May 13, 2019.

7

**C.    Bowyer's Dilatory Conduct in Case No. 19-13113**

In the underlying bankruptcy proceeding, Case No. 19-13113, Bowyer continuously delayed the proceedings, such as through the following:

a. Bowyer filed the Petition on May 13, 2019, without including a matrix listing the creditors. ECF Nos. 1-3.

b. On May 20, 2019, Bowyer filed a Motion to Extend Time to File Creditors Matrix. ECF No. No. 8.

c. On May 24, 2019, Bowyer filed a Motion to Extend Time to File Required Documents. ECF No. 10.

d. On June 12, 2019, Bowyer filed a Second Motion to Extend time to File Required Documents. ECF No. 14.

e. A meeting of creditors was scheduled for August 14, 2019, but was not held because Bowyer failed to appear.

f. A meeting of creditors was held on September 12, 2019, which was not concluded because the Trustee requested additional documents to be filed by Debtor.

*See* Declaration of Richard Kim, ¶¶ 4.

**III.    ARGUMENT**

**A.    Plaintiffs Will be Prejudiced by Setting Aside of the Default**

In conclusory fashion, Bowyer claims that the Plaintiffs have not been prejudiced by his failure to file a timely answer to the Complaint because there is "no loss of evidence, increased potential for fraud or collusion…". (ECF 23-2, Brief, pp. 4-5). Bowyer's assertion, however, is false, short on analysis, and fails to mention the relevant facts. As discussed further below,

Bowyer's repeated delay tactics have prejudice Plaintiffs by preventing them from prosecuting their claims which is also resulting in the loss of evidence to pursue those claims.

As confirmed by the Third Circuit (and district courts within this Circuit), it is not only the delay in filing an answer that is relevant to determine if prejudice exists, but the totality of circumstances that led to the delayed filing and the effect it has on the plaintiff's claims. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1182 (3d Cir. 1984) ("Thus in deciding the issue of prejudice, Woma's failure to answer the complaint must be viewed in the *context of its failure over an extended period of time to answer any claim or correspondence from the plaintiffs*") (emphasis added) (holding that prejudice existed because defendant's repeated failure to respond to plaintiffs' prejudice through the loss of their ability to their claims); *Dapex, Inc. v. Omaya for Importing Cars*, 2015 U.S. Dist. LEXIS 71598, at *8 (D.N.J. June 3, 2015) ("These factors taken together, default judgment is warranted."); *Jimenez v. Marnell*, 2006 U.S. Dist. LEXIS 82860, at *4-5 (D.N.J. Nov. 13, 2006) ("This Court will apply the standard set forth in Hritz…as well as considering the totality of circumstances and whether entry of a default judgment would produce an unfair result.").

Here, Bowyer has attempted to mask his wrongdoing, and has repeatedly delayed and prevented Plaintiffs from prosecuting their claims.  Three (3) years later, since Plaintiffs initiated their claims in Philadelphia Action, they still have not been able to obtain necessary discovery – discovery related to conduct which Bowyer admits he engaged in.  Every step of the way, during the State Court Litigation and now, Bowyer has delayed and obstructed Plaintiffs' ability to obtain relief for Bowyer's wrongdoing. Even though Bowyer admitted to the wrongdoing conduct to Sidney Gold, Esquire (Defendant's prior counsel) who conveyed the admissions to Kim's counsel, directly to Richard Kim in a text message, and to current counsel for Plaintiffs, he has engaged in

9

Document    Page 10 of 20

every action imaginable to increase Plaintiffs' litigation expenses and avoid the relief to which Plaintiffs are entitled. As detailed above, Bowyer filed preliminary objections in the Philadelphia Action (even though he admitted to the wrongful conduct), which were denied. Bowyer then attempted to avoid having his deposition conducted, only to eventually appeared for two (2) hours at which time he refused to answer nearly every question asked of him relating to his wrongful conduct by claiming the Fifth Amendment protection against self-incrimination. Bowyer further obstructed discovery by refusing to provide information, documentation, and computer hardware (used to post and send the harassing emails) resulting in Judge Gary S. Glazer granting Plaintiffs' motion to compel and ordering Bowyer to produce the missing discovery responses by Saturday, May 11, 2018, making the deadline Monday May 13, 2019. Instead of providing the Court Ordered discovery, Bowyer filed for bankruptcy on or Monday, May 13, 2019 – which Bowyer knew would result in a stay of the State Court Action – and allow Bowyer to avoid producing the discovery that he was ordered to produce.

     The Philadelphia Action is now three (3) years old and has been stayed for over two (2) years because of Bowyer's actions. Plaintiffs have spent a considerable sum in litigating this case not only to send foreign subpoenas to determine that Bowyer was the wrongdoer, to try and force him to cooperate in discovery, but through Bowyer's bankruptcy filing. And most recently, Bowyer failed to respond to Plaintiffs' complaint which forced Plaintiffs to expend even more time and resources to move for default judgment and oppose Bowyer's Motion to Vacate. Bowyer's actions have resulted in Plaintiffs' diminished ability to pursue their claims (which he is aware of), which is especially absurd given the admissions that Bowyer has made in this case, and that Judge Glazer issued an order over two (2) years ago for Plaintiffs to obtain discovery which Bowyer has refused to provide.

Moreover, the constant delays by Bowyer are resulting in a loss of evidence. As explained in *White v. FedEx Supply Chain, Inc.*, 2020 U.S. Dist. LEXIS 226804, at *9 (M.D. Pa. Dec. 3, 2020):

> Prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and *possibly irremediable burdens or costs imposed on the opposing party*." *Briscoe*, 538 F.3d at 259. Prejudice is not limited to "irremediable" or "irreparable" harm. *Id.* Further, prejudice extends *beyond loss of evidence and costs to the adversary and incorporates "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy."* Id. Examples of prejudice also include "deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams,* 29 F.3d at 874.

(emphasis added.)

Much of the information that Plaintiffs seek is stored on Bowyer's personal computing devices, as well as by third-parties who possess information relating to the postings on their websites and who has viewed each review. Each and every passing day, Bowyer is able to remove, delete and potentially reformat his devices to scrub the evidence of the wrongdoing from his devices. Evidence is also being lost with respect to the memories of individuals who may have information relating to Plaintiffs' claims, the full identity and number of which Bowyer still has not provided to Plaintiffs. Each day that passes is another day Plaintiffs cannot obtain information from third-parties relating to conduct in 2018 that might be destroyed, such as Google, Facebook, AVVO, Bowyer's internet provider, and Bowyer's cell phone provider. Each and every delay by Bowyer is not only prejudicing Plaintiffs through lost evidence, but also through the continued diminished ability for Plaintiffs to pursue their claims through the persistent costs and expenses that Bowyer is constantly causing.

Critically, at page 7 of his Brief (ECF 23-3), Bowyer argues "all of the factual allegations in the Complaint relating to the alleged postings and text messages are at issue in this matter, and

**Defendant denied having a recollection of posting each of the identified postings**." (emphasis added). Thus, Bowyer has admitted that this long delay has caused him to lose his recollection of having engaged in the actionable conduct. It is likely that others who may have once had knowledge relating to Bowyer's conduct now also suffer the same amnesia.

Lastly, Bowyer cites extensive case law claiming that there should not be a finding of prejudice because he would lose his ability to litigate the case on the merits. Those cases are inapplicable because this case is procedural unlike those matters. Here, a judgment would not terminate Bowyer's ability to litigate the merits of the case, and present any alleged defenses, as Plaintiffs have not filed a proof of claim and intend to proceed with the Philadelphia Action in the event Plaintiffs prevail in this adversary action. Allowing the default to stand would result in Plaintiffs finally being able to pursue their claims in the Philadelphia Action where the merits would actually be litigated. Accordingly, Bowyer has failed to carry his burden in establishing that the default should be set aside.

    **B.    Defendant Does Not Assert a Meritorious Defense**

        **1.    Identity Theft**

"A person commits the offense of identity theft if he *possesses or uses*, through any means, identifying information of another person *without the consent* of that other person to further any unlawful purpose." 18 Pa. Cons. Stat. § 4120 (the "Identity Theft Statute"). Title 42 Pa. Cons. Stat. § 8315 further provides a private right of action for the violation of the PA Identity Theft Statute. As set forth in detail above, Bowyer used Plaintiff's personal identifying information (name, email and phone number) to send harassing text messages; to post racist remarks on Google and Facebook about Plaintiffs and send threatening emails to Plaintiffs.

12

Those actions by Bowyer constitute violations of 18 Pa.C.S. § 2709 *et seq*. (Harassment) and 18 Pa.C.S. § 2710 *et seq*. (Ethnic intimidation).

Bowyer, claims that he has a meritorious defense because "Plaintiffs voluntarily provided Defendant with Plaintiffs' email and cellphone in 2017 when Plaintiffs employed Defendant." (Bowyer's Mtn. pg 12, para. 1.) Like most of the "facts" in Defendant's Motion, this too is a misstatement of the truth and is an illogical reading of the law. Plaintiff provided Bowyer with his email and cellular phone number for work related purposes and never consented to the use of that information for any unlawful purpose – such as harassment. Further, the criminal actions in using Plaintiff's personal identifying information occurred in 2018 and beyond, after Bowyer no longer was working with the Plaintiffs.

Taking Bowyer's argument to its logical conclusion, he claims that he can use Plaintiffs' personal identifying information for unlawful purposes without any consequence because the information was initially obtained with consent. Based on Bowyer's misguided interpretation of the law any individual can unlawfully, in perpetuity, use the identity of another individual in furtherance of any unlawful purpose. Such a reading of the PA Identity Theft Statute makes little sense and would fly in the face of the Statute's purpose. *Commonwealth v. Ballard*, 244 A.3d 815, 821 (Pa. Super. Ct. 2020) ("Moreover, a plain reading of the statute indicates that it is designed to prohibit the malicious use of identifying information such as actual names, account numbers, identification numbers, and the like."). This argument would mean, if you gave an employee of a car dealer your name, date of birth, and social security number, they could then use that information without your consent to commit a crime and could not be held civilly responsible for violating the PA Identity Theft Statute. This would obviously be an absurd result.

In support of his argument, Bowyer cites to inapplicable cases such as *Wallace v. Medianews Grp., Inc.*, 2013 U.S. Dist. LEXIS 7485 (M.D. Pa. Jan. 18, 2013) and *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550, 556 (W.D. Pa. July 9, 2015).  In *Wallace*, the plaintiff Marcus Wallace was an inmate at the Franklin Country Jail charged with slaying his 70-year-old mother.  The Defendant Medianews Group owned a publication called the "Public Opinion".  The Public Opinion had extensively covered Wallace's first-degree murder case.  The Public Opinion then published an article about another individual that allegedly also committed murder.  In that article the mug shot of Wallace was used by mistake.  Wallace argued that the Defendant Medianews Group violated the PA Identity Theft Statute by using Wallace's mug shot.  The court in Wallace determined that the PA Identity Theft Statute was not violated because the Defendant entity Medianews Group did not steal the mug shot and importantly it was not used to "to further an illegal purpose or for financial gain." *Wallace v. Medianews Grp., Inc.*, 2013 U.S. Dist. LEXIS 7485, at *11.

Likewise, the case *Gabriel v. Giant Eagle, Inc.*, 124 F. Supp. 3d 550 (W.D. Pa. 2015), does not stand for the proposition advanced by Bowyer – in order to possess or use identifying information without another person's consent, you must have stolen it.  To the contrary, *Gabriel* related to whether a pharmacy could be held liable for identity theft of a third-party, who had used the plaintiff's identity in connection with an insurance fraud scheme to have prescriptions filled.  *Id.* at 566.  In fact, in *Gabriel*, the court noted "Plaintiff's claim should be directed at the perpetrator." *Id.*  Bowyer also cited to *Jones v. Manpower*, 2014 WL 3908190 (M.D. Pa.., Aug. 11, 2014), in support of his proposition that to be liable for identity theft, you must steal identifying information, rather than use without consent, but the August 11th opinion of the court does not address identity theft.  It appears Bowyer was trying to cite to *Jones v. Manpower*, 2014

14

U.S.Dist. LEXIS 111413, 13-16 (M.D. Pa, June 24, 2014), wherein the court addressed a *pro se* complaint and found that the *pro se* plaintiff failed to state a cause of action for identity theft when he alleges he provided his identifying information to a prior employer and then a third-party, not the former employer, improperly used that information.  In the June 24th opinion in *Jones*, the court found that the *pro se* plaintiff failed to state a claim for identity theft because "Plaintiff did not alleged that [defendant] used his information for any unlawful purpose. Rather, Plaintiff alleged that another client of Defendant obtained his personal information and used it . . . ." *Id.*, *15-16.  Thus, both cases cited by Bowyer that contradict the unambiguous language of the identity theft statute do not support Bowyer's contention that one someone gives Bowyer his name and email, Bowyer can without that person's consent pretend to be that person by using their name and email address for an unlawful purpose.

Based upon the clear language 18 Pa. C.S.A. § 4120 (a), identity theft occurs when one "possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose."  This simply requires that the information be either possessed or used without the consent of the other person, not both.  Here, it was alleged Bowyer used Kim's name and email without Kim's consent and for an unlawful purpose.  Based upon Bowyer's proposed interpretation of the identity theft statute, if anyone sends him an email, Bowyer can take their name and email address and use that information for an unlawful purpose, without subjecting himself for liability for identity theft, which is clearly contrary to the statute.  Here, it makes no difference that Bowyer was once employed by The Kim Law Firm, LLC, as Bowyer does not allege Richard Kim gave him consent to use his name and email address after his employment terminated or for unlawful purposes.

15

Further, Bowyer's draft Answer does not specifically deny engaging in identity theft. Paragraph 67 of the Adversary Complaint alleged "Bowyer also [] committed identity theft by using RK's personal cell phone number to have him sent spam text messages. RK received approximately 50 if not more spammed text messages that were caused by Bowyer." In paragraph 67 of the proposed Answer, Bowyer states "Denied. The allegations set forth in this paragraph constitute conclusions of law to which no response is required. As to the remaining allegations, after reasonable investigation, Defendant is without knowledge or sufficient information to form a belief as tot the truth of the averments set forth in this paragraph; they are denied, and strict proof thereof is demanded." It is hard to understand how Bowyer does not have knowledge whether he used Richard Kim's personal cell phone number to have him sent spam text messages. Bowyer's unsubstantiated refusal to Answer the Adversary Complaint demonstrates he does not have a meritorious defense to the allegations of identity theft.

Paragraph 90 of the Adversary Complaint alleged "[a]s detailed in the Manifesto, Bowyer's actions that constituted identity theft, pretending to be RK or KLF and signing them up to receive countless newsletters in an effort to harass them and cause their email systems to be so clogged up they were rendered unusable, was done for the specific prupose of causing RK and KLF harm or with substantial certainty the acts would cause injury." In paragraph 90 of the Answer, Bowyer states "Denied. The allegations set forth in this paragraph constitute conclusions of law to which no response is required. To the extent a response is deemed required, the allegations are denied." Bowyer's failure to deny that he signed Kim's email address up to receive newsletters demonstrates he does not have a meritorious defense to the allegations of identity theft.

16

### C. Defendant's Failure to File an Answer is the Result of Culpable Misconduct

A defendant's culpable conduct "weighs heavily in the evaluation of whether to grant or set aside a default judgment." *E. Elec. Corp. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605-06 (E.D. Pa. 2009) (citing *Farnese v. Bagnasco*, 687 F.2d 120, 124 (3d Cir. 1983)). The Third Circuit has stated that the standard for culpable conduct is the "'willfulness' or 'bad faith' of a non-responding defendant." <u>Hritz</u>, 732 F.2d at 1182; *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983). Mere negligence is not enough to satisfy the standard. *Hritz*, 732 F.2d at 1183. However, deliberately choosing to default as part of one's trial strategy qualifies as culpable behavior. *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984). Similarly, "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." *Hritz*, 732 F.2d at 1183-84 (holding that it was proper for the "trial judge to enter a default judgment to sanction a party who has callously disregarded repeated notices of a judicial proceeding"). As explained above, Bowyer has engaged in dilatory conduct in the bankruptcy proceeding as well as in the Philadelphia Action that led to and cause the filing of the bankruptcy petition.

### 1. Bowyer's Misconduct in the Philadelphia Action

Here, as discussed extensively above, Bowyer has repeatedly and intentionally delayed litigation of this case by refusing to file a responsive pleading to the operative complaint in the Philadelphia Action, evading the production of discovery, staying the Philadelphia Action the day he was ordered to answer interrogatories, produce documents, and produce his electronic devices with passwords, and requiring Plaintiff to file and respond to documents that would be unnecessary if Bowyer was acting in good faith. Evidence of Bowyer's culpable conduct can be found in every action (and inaction) that Bowyer he has engaged in staring from the Philadelphia Action. After

17

the filing of the complaint in the Philadelphia Action, Bowyer and his counsel were sent *four separate 10-day notices*. Instead of responding to the complaint in the Philadelphia Action (the allegations he had already admitted were true in text messages, emails and through prior counsel, and that were deemed admitted by the Philadelphia Court of Common Pleas), he filed set after set of preliminary objections to dismiss the complaint. Then when he failed there, he refused to appropriately respond to discovery and sought the protection of the Fifth Amendment at his deposition to avoid providing any relevant testimony. Making matters worse, after Judge Glazer required Bowyer to produce the requisite discovery that Plaintiff sought, including all of his electronic devices with passwords, Bowyer then used the Bankruptcy Court to stay the Philadelphia Action. Now, Bowyer waited over nine (9) months to respond to Plaintiffs' Adversary Complaint. Evidence of Bowyer's willful and culpable actions to avoid and wear down Plaintiffs can be seen in almost every step that he takes (or fails to take). Even now, Plaintiffs' were forced to expend more time and resources to respond to have a judgment entered and oppose Bowyer's Motion when this could have all been avoided by a simple answer. Accordingly, Bowyer's willfulness and bad faith conduct further confirms that the Judgment should not be set aside and Plaintiffs should be entitled to pursue their claims in State Court which have now been stalled and pending since 2018.

    **2.    Bowyer's Continued Delay by Waiting 31 Days to File this Motion Without Excuse**

Bowyer, rather than accepting blame for failing to file an Answer to the Adversary Complaint for approximately 9 months, attempts to point the finger at Kim's counsel. Without providing the Court with a declaration or any other competent facts that could be considered by the Court, Bowyer's counsel claims between the time of the Court's September 10, 2020 Order denying in part and granting in part Defendant's motion to dismiss, that the delay was caused by

18

settlement negotiations. Quite notably, Bowyer's counsel does not list the date of these communications and fails to state whether Bowyer made any settlement offers or state that he was waiting for a response to a settlement offer. If Bowyer did not make any settlement offers, it is hard to understand how Bowyer could have thought the adversary proceeding was going to settle and could have been justified to have done nothing for nine months.

More importantly, Bowyer notes that his counsel only requested "professional courtesy" after the default was entered on July 6, 2021. Bowyer cites to *In re Bernstein*, 113 B.R. 172, 174 (Bankr. D.N.J. 1990), for the proposition that Kim's counsel should have agreed to lift the default upon request, with would obviously take the teeth out of Fed.R.Civ.P. 55. In *Bernstein*, the defendant's counsel left voicemails with plaintiff's counsel prior to the deadline to answer to request an extension and plaintiff's counsel filed for a default on the 31st day. *Id.*, at 173. The *Bernstein* court found that requesting an extension prior to a deadline expiring constituted good cause. *Id.*, at 174. Here, the Court entered an order on September 10, 2020 granting in part and denying in part Bowyer's motion to dismiss, which under Fed. R. Bank. 7012 made Bowyer's deadline to Answer the Complaint 14 days later, September 24, 2021.

On July 6, 2021, the Court entered an order stating that "1. The Plaintiff shall take appropriate action to prosecute this proceeding (e.g. a Motion under Fed. R. Bank. P. 7055) or before **July 19, 2021**. 2. Upon failure to prosecute this proceeding, this adversary proceeding **may be dismissed for lack of prosecution** without further notice or opportunity for a hearing." (ECF No. 16). On July 6, 2021, Kim filed a request for entry of default, which was entered on July 7, 2021.

Bowyer did not move to strike the default until August 6, 2021 (ECF No. 23), which is 31 days after the entry of the Court's July 6, 2021 Order. Bowyer offers no excuse for waiting 31

days to move for to set aside the default. Bowyer's conduct of delaying 31 days after Kim requested the entry of a default and 30 days after the default was entered evidences his continued attempts to delay this proceeding.

## IV.   CONCLUSION

The Court should enter an Order denying the motion because Bowyer failed to sustain his burden of proof to have the default lifted.

Respectfully submitted,

**OFFIT KURMAN, P.A.**

By: */s/Ryan N. Boland*
RYAN N. BOLAND
PA Bar ID No. 202977
Ten Penn Center
1801 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (267) 338-1312
Facsimile: (267) 338-1335
E-mail: rboland@offitkurman.com

Dated: August 16., 2021

4830-7015-6534, v. 1